UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEISHA JOHNSON, *individually and
on behalf of all others similarly situated*,

          Plaintiff,

      v.

RENEW, LLC and NEIL
KARNOFSKY, D.D.S., PLLC,

          Defendants.

**MEMORANDUM DECISION AND ORDER**

24-cv-2420 (BMC)

**COGAN**, District Judge.

This Fair Labor Standards Act ("FLSA") case is before the Court on plaintiff's motion to vacate the Court's Order that dismissed this case and approved the parties' settlement under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). For the reasons below, the motion is denied.

## BACKGROUND

Plaintiff worked for Renew, LLC ("Renew"), a nationwide dental company incorporated under New York law, at its New York location, which was operated by Neil Karnofsky, D.D.S., PLLC ("Karnofsky"). In 2024, plaintiff was informed "that there was a lack of payroll funding" and one week later, was terminated, along with "all other New York . . . employees."

Plaintiff filed suit shortly afterward. The case went to arbitration, during which the parties reached a settlement in principle. That settlement was not reduced to writing for several months. Early this year, however, the parties signed an agreement, settling this case for $44,397.30, with 51% owed by Renew, and 49% owed by defendant Karnofsky.

On January 2, 2026, before the agreement was executed, Renew, according to plaintiff, "insisted on extending the payment deadline past January 31, [2026,] claiming that Renew needed extra time 'to do some capitalization . . . before the payments are made." Plaintiff agreed.

On January 30, 2026, the parties filed their first <u>Cheeks</u> motion. According to Renew's counsel, Renew "suddenly and unexpectedly went out of business" the very next day.

On February 2, 2026, the Court denied without prejudice the parties' first <u>Cheeks</u> motion because plaintiff's counsel "failed to provide contemporaneous billing records for attorneys involved" and "provided no documentation supporting their requested costs," and so the Court could not evaluate the fairness and reasonableness of the proposed settlement. <u>See</u> <u>Cucul v. Major Cleaning, Inc.</u>, 761 F. Supp. 3d 545, 554 (E.D.N.Y. 2025) ("failure to provide this documentation necessarily warrants denial of the fee application without prejudice").

On February 6, 2026 – at which point Renew had ceased operations – the parties filed their second <u>Cheeks</u> motion with the appropriate evidence pertaining to attorneys' fees. The Court granted the motion.

On February 24, 2026, Renew's counsel notified plaintiff's counsel that Renew was "in dissolution mode, [so] it [was no longer] in a position to make the settlement payments." Renew's counsel denied having any knowledge of the dissolution until that day.[1]

Plaintiff sought emergency relief before the arbitrator. She asked (1) that the settlement be enforced in full against Karnofsky under the joint and severable liability doctrine; (2) for expedited discovery into Renew's dissolution; and (3) that the arbitrator impose sanctions and

---

[1] Plaintiff and Karnofsky largely blame Renew's counsel for hiding the ball, but it is unclear whether counsel knew about the "dissolution mode" before notifying the other parties. What is clear, as discussed below, is that before this lawsuit was commenced, plaintiff, Renew, Karnofsky, and all of their counsel knew that Renew was in serious financial distress.

2

award attorneys' fees for Renew's conduct.  The arbitrator denied the relief, stating that the settlement superseded the arbitration clause, redirecting plaintiff to this Court.

**DISCUSSION**

When "the Court has approved [a settlement], holding that it satisfied <u>Cheeks</u> review . . . [t]he proper mechanism through which [a plaintiff] may seek to vacate or modify that order is Rule 60[.]" <u>Tolomei v. Hess Restorations, Inc.</u>, No. 23-cv-52, 2025 WL 1616904, at *2 (S.D.N.Y. June 6, 2025).  Here, plaintiff styled her motion as one to vacate due to "fraud[,] misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or alternatively, "set aside [the] judgment for fraud on the court," Fed. R. Civ. P. 60(d)(3).

**I.     <u>Legal Standard</u>**

Rule 60(b)(3) motions apply only to conduct "by an opposing party" and must be made within one year of the judgment; and Rule 60(d)(3) motions apply to conduct by others and have no timeline.  <u>See</u> <u>Marco Destin, Inc. v. Levy</u>, 690 F. Supp. 3d 182, 194 (S.D.N.Y. 2023).  But a plaintiff "cannot salvage its [untimely Rule 60(b)(3)] claim by invoking Rule 60(d)(3)." <u>Id.</u>  In other words, Rule 60(b)(3) and Rule 60(d)(3) are mutually exclusive.  Here, Renew was an opposing party, and thus the Court must consider plaintiff's motion under Rule 60(b)(3).  Plaintiff's motion is timely as it was brought within the one-year deadline.

For relief under Rule 60(b)(3), plaintiff must show "clear and convincing evidence of material misrepresentations." <u>Fleming v. N.Y. Univ.</u>, 865 F.2d 478, 484 (2d Cir. 1989).  "Where the fraud is based on alleged omission of material fact – as is the case here – the plaintiff must show that the defendant had a duty to disclose." <u>Kirschner v. Bennett</u>, 759 F. Supp. 2d 301, 316 (S.D.N.Y. 2010).

3

Here, plaintiff contends that Renew, having omitted to disclose that it was in "dissolution mode," made a material misrepresentation under Rule 60(b)(3). The issue is thus whether Renew's "dissolution mode" was a "material fact" and, if so, whether Renew had a duty to disclose it. As discussed below, Renew's dissolution was not material to <u>Cheeks</u> approval, but even if it were, plaintiff and the Court have known about Renew's failing financial condition since this case began, so any failure to disclose it was harmless.

## II.    <u>Analysis</u>

The purpose of the Court's "<u>Cheeks</u> fairness review [is] to determine whether the employer has overreached in obtaining a settlement from the employee under dubious circumstances." <u>Douglas v. Allied Universal Sec. Servs.</u>, 381 F. Supp. 3d 239, 243 (E.D.N.Y. 2019). The Court looks to the terms of the settlement to "protect the plaintiff from potential abuse in settlement." <u>Savor Health LLC v. Day</u>, No. 19-cv-9798, 2025 WL 4375079, at *6 (S.D.N.Y. Dec. 29, 2025) (quotations omitted). But there is a fundamental difference between abuse in reaching a settlement, and the failure to perform one's settlement obligations.

The Court does not generally inquire about an FLSA defendant's intent or ability to pay a settlement, first, because it is up to the plaintiff's attorney to obtain assurance of collectability, and second, because the FLSA plaintiff can enforce the settlement in a subsequent breach-of-contract action, albeit in state court.[2] <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375 (1994) ("The suit involves a claim for breach of a contract, part of the consideration for

---

[2] It is true that, when reviewing an FLSA settlement under <u>Cheeks</u>, "the Court is especially concerned [about an FLSA defendant's] ability to pay." <u>Lopez v. Overtime 1st Ave. Corp.</u>, 252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017). But this refers to whether further litigation is financially sensible, <i>i.e.</i>, whether the defendant could pay a judgment if the plaintiff prevailed at trial. If "there is substantial risk that any judgment [the plaintiff could obtain] would be worthless," <u>Anzovino v. Wingate of Dutchess, Inc.</u>, No. 21-cv-7625, 2023 WL 348024, at *4 (S.D.N.Y. Jan. 20, 2023), courts favor approving the settlement, because it's better for the plaintiff to recover something rather than nothing. If an FLSA defendant's inability to pay a proposed settlement cut against granting <u>Cheeks</u> approval, the only alternative – proceeding to trial – would further decrease the likelihood that the plaintiff recovering anything.

which was dismissal of an earlier federal suit.  No federal statute makes that connection . . . the basis for federal-court jurisdiction over the contract dispute.”).

On the record before the Court, it is not clear what Renew's counsel meant by Renew having gone into “dissolution mode,” and plaintiff has not enlightened the Court further.  What is clear is that it does not end Renew's obligations under the settlement agreement.  See N.Y. LLC L. § 703.  Put differently, had Renew disclosed that it was in “dissolution mode”, the Court would have still granted Cheeks approval because dissolution is not a “get out of debt free card” for New York LLCs.  See In re Grand Jury Subpoenas Issued to Thirteen Corps., 775 F.2d 43, 48 (2d Cir. 1985) (“[U]nder New York corporation law, a dissolved corporation does not cease to exist for all purposes.”); Smart Team Glob. LLC v. Humbletech LLC, No. 19-cv-4873, 2022 WL 847301, at *4 n.1 (S.D.N.Y. Feb. 18, 2022) (“the members of a New York LLC may continue to sue and be sued ‘in the name of and for and on behalf of the limited liability company’ even after its dissolution.” (quoting N.Y. LLC L. § 703)).

Accordingly, Renew's entry into “dissolution mode” was not “material” such as to warrant relief under Rule 60(b)(3).  The fact that it was under severe financial distress may have been, but plaintiff already knew that – the complaint itself alleged it:

> 17.  On February 14, 2024, Renew's Chief Clinical Officer, William L. Balanoff, informed Defendants' New York and New Jersey employees that there was a lack of payroll funding.
>
> 18.  Renew's Vice President of Legal, Carri Bryan, regularly communicated with Defendants' New York and New Jersey employees regarding their employment.
>
> 19.  On February 21, 2024, Carri Bryan terminated the employment of Johnson and, upon information and belief, the employment of all other New York and New Jersey employees.

The question thus becomes what plaintiff expected when she sued a business that couldn't make payroll and terminated all of its employees.  True, Renew only shut down the

5

New York and New Jersey locations, and ostensibly kept its locations in other states running between then and now. But that is entirely consistent with the pre-settlement statement by Renew's counsel to plaintiff's counsel that Renew needed extra time "to do some capitalization . . . before the payments are made," *i.e.*, that Renew was trying to find a way to pay the settlement by moving assets around between its entities. That interpretation is at least equally consistent with plaintiff's interpretation that Renew's actions suggest an attempt to defraud.

In fact, it is even more plausible that Renew was trying to come up with some money so it could close the deal because, really, there is no point in pretending otherwise. Renew could have just outright refused to pay plaintiff without this supposed charade and the parties would be in the exact same position they are in now. Any effort Renew made (if there was any) to refinance its obligations, such as this settlement, obviously failed. Had it gone belly up three months earlier, plaintiff would have been no better off.

A lot of the wage cases in this Court are against financially marginal defendants. FLSA plaintiffs can take innumerable steps in their settlement negotiations to protect themselves against non-performance in such instances, *e.g.*, escrow funds, confessions of judgment, letters of credit, guarantees of principals, etc. That was not done here, but it does not make the cessation of business a fraud. If plaintiff, in subsequent litigation, finds improper asset transfers by or out of Renew, whether to Karnofsky or others, she has her remedies against any individuals or companies who received those transfers.

In sum, all of Renew's New York employees (including plaintiff) were terminated after Renew admitted that it could not fund the payroll. So, plaintiff has known about Renew's deteriorating financial condition since the inception of this case, and it was always a risk that

6

Renew would default on its settlement obligations.  There was thus no fraud or misrepresentation by failing to disclose a risk that was obvious.

**CONCLUSION**

Plaintiff's motion is denied.


**SO ORDERED.**

*Brian M. Cogan*

Dated:  Brooklyn, New York
       July 6, 2026

U.S.D.J.